IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBER GORDON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 14-3056 |
| LA SALLE UNIVERSITY | : | |

**M E M O R A N D U M**

JOSEPH F. LEESON, JR., J.                                              April 16, 2015

    This is an action under Section 504 of the Rehabilitation Act. Plaintiff Amber Gordon, who suffers from various disabilities and other health problems, was dismissed from defendant La Salle University's Marriage and Family Therapy Master's Degree Program when she was unable to complete the required clinical component of the program. In this action, she seeks to recover damages which she attributes to defendant's alleged refusal to accommodate her disabilities and permit her to complete the program.

    In support of her claims, plaintiff proposes to rely on the expert opinion of John W. Dieckman, who was retained by plaintiff to provide a vocational assessment and an analysis of plaintiff's alleged economic loss. Defendant has moved to exclude the report on the ground that it is speculative and ignores relevant legal facts, and therefore does not satisfy the requirements of Fed. R. Evid 702. For the reasons that follow, the motion will be denied without prejudice to defendant raising these objections at trial.

In his report, Mr. Dieckman opines that plaintiff's total future loss of earnings as a result of the inability to obtain a master's degree is $860,997. This represents an annual salary loss of $21,370 – the difference between the average salary of a counselor with a master's degree, and the average salary of counselors and mental health workers without master's degrees. Mr. Dieckman multiplied this figure by 40.29 years – plaintiff's expected work life. Report at 17-18.

Defendant finds fault with the report's methodology and conclusions on several grounds, including:

The report does not account for the fact that plaintiff is not presently working, and will likely not be able to do so for at least one year, the expected duration of her Lyme disease treatment. Mr. Dieckman admitted this at deposition. Dieckman Tr., 17, 19. Notwithstanding this, the projected loss of earnings reflected in the report assumes that plaintiff is currently suffering a loss of earnings, Report at 18, and that this loss will continue through her expected working life. As to the latter, there is no acknowledgement in the report that plaintiff may never be able to work. In short (1) plaintiff is not currently suffering economic loss, as indicated in the report; and (2) there is no factual basis for using 40.26 years of expected work life as a multiplier.

The report does not acknowledge that plaintiff is presently not, and may never be, medically able to take part in any Master's Degree program.

The report assumes that plaintiff would earn a higher salary if she became a Master's-level therapist, while acknowledging that there is no

2

guarantee that a degreed therapist can command a higher salary than a non-degreed therapist. Mr. Dieckman also admitted this at depositions. Dieckman Tr. 38. Thus, not having the degree does not clearly subject plaintiff to wage loss as measured by the differential used in the report, and may not subject plaintiff to any wage loss at all.

The report ignores the possibility that plaintiff may one day be medically able to return to the pursuit of a Master's Degree and choose to complete the program at another institution, or pursue a different educational and employment path altogether. At deposition, Mr. Dieckman admitted it was possible that plaintiff could do this, and in that event, she might not suffer any wage loss. Dieckman Tr. 17, 23.

According to defendant, the foregoing renders the report speculative, hence inadmissible.

Admissibility of an expert report is governed by Red. R. Evid. 702. Rule 702 requires that a proffered expert report satisfy three elements: expert qualification, reliability, and fit. *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Rule 702 is to be interpreted liberally, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993). Here, defendant does not question Mr. Dieckman's qualifications. Rather, defendant challenges the reliability and fit of the evidence. With respect to reliability, "[t]he ultimate touchstone is helpfulness to

3

the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results." *In re Paoli R.R. Yard PCB Lit.*, 35 F.3d 717, 744 (3d Cir. 1994). "'The focus must be solely on principles and methodology, not on the conclusions that they generate.' The grounds for the expert's opinions merely have to be good, they do not have to be perfect." *Id.* at 743, quoting *Daubert*. As to fit, "[a]dmissibility thus depends in part upon the proffered connection between the . . . test results to be presented and particular disputed factual issues in the case." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (citations omitted).

"[P]laintiff's expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Gumbs v. Int'l. Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983). While recognizing that "[a]ny testimony as to the future earnings of a particular individual is speculation of the most obvious kind because its basic premise, the time that the person would have worked . . . is simply not determinable," *Heckman v. Federal Press Co.*, 587 F.2d 612, 617 (3d Cir. 1978), defendant argues that in this case, the report is not merely speculative but demonstrably incorrect based on undisputed facts. Plaintiff is not currently working because she cannot, whether she were to have completed her degree program or not. She is not currently suffering any loss of earnings traceable to any act of La Salle. The calculation of lifetime loss of earnings – which includes current lost earnings – is also as a result demonstrably incorrect.

In response, plaintiff acknowledges that the report is necessarily based to some degree on speculation, but well-based speculation. The conclusions in the report are based on plaintiff's work life expectancy and Bureau of Labor Statistics data concerning median wages for an individual with plaintiff's qualifications. The value of potential fringe benefits is not included. The report, is, in plaintiff's view, conservative, and will aid the jury in calculating damages, a necessarily difficult process that involves consideration of factors that are likely to be outside a lay juror's knowledge.

As to the apparent contradictions raised by defendant, plaintiff argues that these go to the weight to be given to Mr. Dieckman's opinion, not its admissibility.

Defendant may, of course, cross-examine Mr. Dieckman at trial to expose any weaknesses in his conclusions. *Daubert, supra.* Defendant may also raise the objections included in its motion at trial.

An order accompanies this memorandum.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR., J.